UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| DENNA C.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:24-cv-00161-KMB-TWP |
| | ) | |
| FRANK BISIGNANO,[2] | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff Denna C. applied for disability benefits and supplemental security income from the Social Security Administration ("SSA") on March 31, 2021, alleging an onset date of November 4, 2020. [Dkt. 10-2 at 11.] The Agency denied her claims initially on December 7, 2021, and on reconsideration June 10, 2022. Administrative Law Judge Kevin Walker (the "ALJ") issued a decision on February 21, 2024, concluding that Denna was not disabled and therefore not entitled to receive the requested benefits. [*Id.* at 27.] The Appeals Council denied her request for review on September 20, 2024. [*Id.* at 2.] On November 25, 2024, Denna timely filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g) and 28 U.S.C. § 1361. [Dkt. 1.]

---

[1] To protect the privacy interests of claimants for Social Security benefits, and consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first names and last initials of non-governmental parties in its Social Security judicial review opinion.

[2] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted as the defendant in this suit since he is the Commissioner of the Social Security Administration. No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I. STANDARD OF REVIEW

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Stephens*, 888 F.3d at 327. "[S]ubstantial evidence" is "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). "[E]ven under deferential standard of review for social security disability cases, an [ALJ] must provide a logical bridge between the evidence and [the] conclusions." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (internal quotations omitted).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id*. The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

## II. BACKGROUND[3]

Denna was 51 years old when she applied for disability benefits.  [Dkt. 10-3 at 3.] She previously worked as a day care center teacher, sales attendant, customer service manager, cashier manager, fast food shift supervisor, and cook helper.  [Dkt. 10-2 at 43; dkt. 10-3 at 11.]

The ALJ followed the five-step evaluation set forth by SSA in 20 C.F.R. § 404.1520(a)(4) and concluded that Denna was not disabled.  Specifically, the ALJ found as follows:

- At Step One, Denna has not engaged in substantial gainful activity since November 4, 2020, the alleged onset date.  [Dkt. 10-2 at 12.]

- At Step Two, Denna has the following severe impairments: degenerative disc disease; type II diabetes mellitus with diabetic neuropathy; obesity; generalized anxiety disorder; major depressive disorder; stimulant use disorder; methamphetamine use disorder; and cannabis use disorder.  [*Id.* at 13.]

- At Step Three, Denna does not have an impairment of combination of impairments that meets or medically equals the severity of one of the listed impairments.  [*Id.* at 13-14.]

- After Step Three but before Step Four, Denna has the RFC "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally lift and carry 20 pounds, frequently lift and carry ten pounds, and push/pull unlimited except for the weights indicated.  She can stand or walk for up to six hours in an eight-hour workday and sit for up to six hours in an eight-hour workday.  She can do occasional climbing of ramps or stairs and never climbing ladders, ropes, or scaffolds.  She can do occasional balancing, stooping, kneeling, crouching, and crawling.  She can have no exposure to concentrated wetness.  She can have no exposure to unprotected heights. She has the ability, on a sustained basis, to understand, carryout, and remember simple instructions. She is able to make judgments commensurate with functions of simple, repetitive tasks. She can respond appropriately to brief supervision and to interactions with coworkers and work situations (here 'brief' is being defined as up to one-third of the duty day).  She is able to deal with changes in routine work settings."  [*Id.* at 16-17.]

- At Step Four, Denna is unable to perform any past relevant work.  [*Id.* at 26.]

- At Step Five, relying on testimony from the vocational expert ("VE"), and considering Denna's age, education, and RFC, there were jobs that existed in the national economy

---

[3] The relevant evidence of record is set forth in the Parties' briefs and need not be repeated here. Specific facts relevant to the disposition of this case are discussed below as necessary.

4

that Denna could have performed through the date of the decision, including inspector and hand packager.  [*Id.* at 28.]

### III. DISCUSSION

Denna raises five issues for the Court's review: (1) whether the ALJ erred at Step Four by failing to properly evaluate the Agency experts' opinions and to adequately account for moderate limitations in concentration, persistence, or pace; (2) whether the ALJ erred at Step Four by failing to account for uncontroverted evidence from the Agency's examining expert; (3) whether the ALJ erred at Step Four by improperly assessing raw diagnostic findings; (4) whether the Commissioner met the Step Five burden to establish that a significant number of jobs exist in the national economy where the ALJ relied on outdated job information; and (5) whether the ALJ conducted a legally sufficient symptom assessment at Step Four.  [Dkt. 14 at 6-7.]  The Court will address each issue in turn.

#### A. Whether the ALJ Adequately Accounted for Denna's Moderate Limitations in Concentration, Persistence, or Pace

Denna argues that the ALJ erred at Step Four by finding the state-agency psychological opinions persuasive but failing to incorporate or explain the omission of several moderate mental limitations identified by Drs. Unversaw and Shipley, including limitations in maintaining attention and concentration for extended periods, completing a normal workday and workweek, performing at a consistent pace, interacting with coworkers, and adapting to workplace changes.  [Dkt. 14 at 6-7.]  Denna contends that limiting her to simple work with social restrictions did not adequately account for the ALJ's own finding of a moderate limitation in concentration, persistence, or pace ("CPP"), and the ALJ did not build a logical bridge explaining how those restrictions accommodated the credited expert opinions.  [*Id.* at 8-9.]  She maintains that when an ALJ credits medical opinions identifying moderate mental limitations in the worksheet portions of the opinions, those limitations must either be incorporated into the RFC and the hypothetical posed to

the vocational expert or their omission must be explained.  [*Id.* at 10.]  Denna also argues that the ALJ failed to confront other evidence in the record which establishes difficulty staying on task. [*Id.*]

The Commissioner responds that the ALJ properly evaluated the state-agency psychological opinions and reasonably accounted for Denna's supported mental limitations by adopting the consultants' narrative functional assessments.  [Dkt. 16 at 7.]  The Commissioner relies on *Pavlicek v. Saul*, 994 F.3d 777 (7th Cir. 2021), and similar precedent for the proposition that an ALJ may rely on reviewing consultants' narrative findings when those findings reasonably translate moderate worksheet ratings into functional limitations.  [*Id*. at 8.]  The Commissioner further argues that the ALJ acknowledged evidence of inattention, tearfulness, and tangential thoughts but reasonably weighed that evidence against other findings reflecting average attention and intact functioning, which is within the ALJ's role.  [*Id*. at 9.]  The Commissioner also contends that Denna improperly equates a moderate CPP finding with a requirement for additional off-task limitations and emphasizes that there is no categorical rule prohibiting an ALJ from accommodating moderate CPP limitations with restrictions to simple, repetitive work.  [*Id.* at 10-11.]  According to the Commissioner, the ALJ did not rely solely on a bare "simple work" limitation but incorporated the consultants' translated functional restrictions, and substantial evidence supports affirmance.  [*Id.* at 11]

In reply, Denna argues that the Commissioner has not shown that the ALJ translated the moderate worksheet limitations into the RFC.  [Dkt. 17 at 2.]  She maintains that although the ALJ found the consultants' opinions persuasive, he neither incorporated their specific moderate limitations, such as limitations in maintaining attention for extended periods and completing a normal workday/workweek, nor explained their omission.  [*Id.*]  Denna further contends that this

case is distinguishable from *Pavlicek* and similar decisions because, unlike in those cases, the consultants' narratives here did not expressly address sustained attention or pace over the course of a workday. [*Id.* at 3.] Finally, she argues that the alleged error was not harmless because the vocational expert testified that competitive employment would be precluded if an individual were off task more than fifteen percent of the workday. [Dkt. 10-2 at 74.] Accordingly, Denna asserts that remand is required.

An ALJ is not required to incorporate every moderate limitation appearing in the worksheet portions of state-agency psychological opinions verbatim into the RFC. Rather, the relevant inquiry is whether the ALJ reasonably accounted for supported mental limitations through functional restrictions in the RFC or by relying on medical opinions that translate those limitations into work-related terms. *Pavlicek*, 994 F.3d at 783 ("[T]he ALJ reasonably relied on the narrative RFC because it was in fact consistent with the 'moderate' checklist ratings."); *Burmester v. Barryhill*, 920 F.3d 507, 511 (7th Cir. 2019) ("[A]n ALJ may reasonably rely upon the opinion of a medical expert who translates these findings into an RFC determination."); *Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015) (holding that the ALJ must consider whether the consultants' narrative RFC assessments "adequately encapsulate[d] and translate[d]' the checklist").

Here, the ALJ found the opinions of state-agency psychological consultants Drs. Unversaw and Shipley persuasive. [Dkt. 10-2 at 24.] Those consultants reviewed the record and concluded that, despite Denna's mental impairments, she retained the ability to understand and carry out simple instructions; perform simple and repetitive tasks; interact appropriately with supervisors and coworkers on a limited basis; and adapt to routine workplace changes. [*Id.*; dkt. 10-3 at 10, 43.] The ALJ incorporated these functional restrictions into the RFC by limiting Denna to simple, repetitive work with additional social and environmental limitations. [Dkt. 10-2 at 17-18.]

Because the consultants translated their moderate worksheet findings into narrative functional limitations describing what Denna could still do, the ALJ was permitted to rely on those translated limitations. *Pavlicek*, 994 F.3d at 783. Denna argues that the consultants' narratives failed to address certain worksheet findings, including limitations related to maintaining attention for extended periods and completing a normal workday or workweek. [Dkt. 14 at 8.] But binding precedent has rejected the argument that an ALJ must separately include each worksheet limitation when medical experts have already synthesized those findings into functional restrictions. *See Burmester*, 920 F.3d at 511. In Denna's case, the Court is satisfied that the ALJ reasonably relied on the consultants' professional translation of her mental limitations into work-related functional terms.

Substantial evidence also supports the ALJ's conclusion that additional CPP-related restrictions, such as specific pace or off-task limitations, were not warranted. The ALJ acknowledged evidence reflecting Denna's symptoms, including reports of distractibility, tearfulness, guardedness, and impaired insight and judgment. [Dkt. 10-2 at 23.] The ALJ, however, reasonably weighed that evidence against other treatment findings documenting intact memory, logical thought processes, average attention and concentration, and generally normal mental status examinations. [*Id.*] The ALJ also considered evidence that Denna's functioning improved with treatment and periods of abstinence from substance use, as well as her reported activities of daily living, including driving, completing deliveries, shopping, managing finances, and interacting socially. [Dkt. 10-2 at 17-18.] Resolving conflicts in the medical and testimonial evidence is the ALJ's responsibility, and it is well-established that this Court may not reweigh that evidence or substitute its judgment for that of the ALJ. *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024).

Denna emphasizes cases that were remanded because an ALJ limited the claimant to simple work without adequately addressing CPP limitations. [Dkt. 14 at 8-9 (citing *Heather L. v. Kijakazi*, 2023 WL 2643240, at *5 (S.D. Ind. Mar. 27, 2023), and *Moreno v. Berryhill*, 882 F.3d 722, 729-30 (7th Cir. 2018)).] Those cases are distinguishable because unlike in those cases, the ALJ in Denna's case did not independently assume that a limitation to simple work adequately accommodated Denna's CPP limitations. Instead, the ALJ relied on medical experts who reviewed the record and translated Denna's moderate mental limitations into specific functional work restrictions that the ALJ adopted. The Court finds that this approach is consistent with controlling precedent. *Pavlicek*, 994 F.3d at 783; *Burmester*, 920 F.3d at 511; *Varga*, 794 F.3d at 816. For all of these reasons, the Court concludes that the ALJ reasonably evaluated the state-agency psychological opinions and adequately accounted for Denna's supported CPP limitations, such that remand is not required on this basis raised by Denna on appeal.

**B.      Whether the ALJ Failed to Build a Logical Bridge Between Lumbar Flexion Findings and the RFC Stooping Restriction**

Denna next argues that the ALJ failed to build a logical bridge from the agency's examining expert's objective findings to the RFC. [Dkt. 14 at 12.] Specifically, she contends that the consultative examiner documented markedly limited lumbar flexion (40 degrees), which Denna says is consistent with her reports and third-party evidence of difficulty bending, yet the ALJ found she could occasionally stoop without explaining how that finding is compatible with the objective limitation in flexion. [*Id.* at 13.] Denna maintains that because stooping requires near-maximal bending at the waist, the ALJ was required to reconcile the apparent inconsistency between the examiner's testing results and the RFC's stooping allowance, particularly given that the evidence came from an examining agency expert, Dr. Borkowski. [*Id.*] She further argues the error is not

harmless because the Commissioner has not shown that a significant number of jobs would remain if Denna's stooping were further limited.  [*Id.* at 15.]

The Commissioner argues that substantial evidence supports the ALJ's light-work RFC with postural limits because the record showed mixed but often normal objective findings (including normal gait, posture, hip and knee range of motion, as well as improvement in pain management after medication and exercise). [Dkt. 16 at 12.]  The Commissioner contends that the ALJ reasonably found Dr. Borkowski's opinion unpersuasive based on lack of support and inconsistency with the broader record, and Denna's focus on the single finding of 40-degree lumbar flexion does not compel a greater stooping restriction, especially because Dr. Borkowski did not opine regarding any stooping limitation and later noted normal lumbar range of motion. [*Id.* at 15-16.]  The Commissioner further argues that the ALJ permissibly relied on the state-agency reviewing physicians who considered the consultative exam and imaging and still found occasional stooping appropriate.  [*Id.* at 16.]

In her reply brief, Denna reiterates that the ALJ accepted the Agency's examining expert's finding that she had only 40 degrees of lumbar flexion but failed to reconcile that finding with the RFC's allowance for occasional stooping, which she contends requires near-maximal flexion. [Dkt. 17 at 10.]  She argues that Seventh Circuit authority recognizes an apparent conflict between flexion at or below roughly 50 degrees and the ability to stoop occasionally, and that the Commissioner's response does not meaningfully address that caselaw.  [*Id.* at 10-11 (citing *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003)).]  Denna further maintains that the Commissioner's reliance on the ALJ's discounting of Dr. Borkowski's overall opinion misses the point because the error concerns an uncontradicted examination finding rather than an opinion about stooping.  [*Id.* at 11.]  She also argues that the Commissioner's attempt to rely on other

portions of the report (suggesting normal range of motion) is *post hoc* rationalization, inconsistent with the ALJ's own acknowledgment of limited lumbar motion, and that reliance on state-agency reviewers cannot cure the error absent an explanation reconciling the flexion limitation with occasional stooping.  [*Id.*]  Finally, Denna again contends the error is not harmless.  [*Id.* at 12.]

The ALJ expressly acknowledged that Dr. Borkowski observed decreased lumbar range of motion during the November 2021 consultative examination.  [Dkt. 10-2 at 20.]  He did not ignore that finding.  However, the ALJ also considered the whole examination, which reflected otherwise largely normal objective findings.  Dr. Borkowski documented Denna's full strength, intact sensation and reflexes, normal gait and station, and her ability to heel-walk, toe-walk, hop, and squat.  [Dkt. 10-2 at 20; dkt. 10-8 at 153.]  Dr. Borkowski did not opine that Denna was unable to stoop or impose any stooping limitation.  Rather, her functional opinion addressed walking, lifting, and carrying.  [*Id.*]

In evaluating the persuasiveness of Dr. Borkowski's opinion, the ALJ found that the extreme walking and lifting limitations were unsupported by the largely normal clinical findings and inconsistent with the broader record, which included conservative treatment and mixed examination findings.  [*Id.* at 23, 25.]  The ALJ nevertheless limited Denna to light work with additional postural restrictions, including occasional stooping.  [*Id.* at 17-18.]  The state-agency reviewing physicians, who considered Dr. Borkowski's examination findings, including reduced lumbar range of motion, likewise concluded that Denna could occasionally stoop.  [*Id.* at 24.]

Denna relies on cases such as *Golembiewski*, 322 F.3d at 917, in which the Seventh Circuit Court of Appeals found reversible error where the ALJ failed to address apparent inconsistencies between objective flexion findings and stooping capacity.  But *Golembiewski* and the other cases cited by Denna involved circumstances in which the ALJ either altogether ignored the limitation

or failed to confront a direct conflict between credited evidence and the RFC. Here, by contrast, the ALJ acknowledged reduced lumbar motion and imposed postural restrictions consistent with the record as a whole. The record in this case does not compel the conclusion that a single measurement of 40 degrees of lumbar flexion necessarily precludes all stooping, particularly where the same examination demonstrated normal strength, intact neurological findings, and functional abilities such as squatting. This Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Morales*, 103 F.4th at 471. Because the ALJ considered the relevant objective findings, including the prior administrative medical findings, the Court concludes that Denna has not demonstrated reversible error on this ground.

### C. Whether the ALJ Properly Evaluated the November 2022 Lumbar MRI

Denna argues that the ALJ erred by failing to properly evaluate the November 2022 lumbar MRI findings, which showed spondylolisthesis suggesting instability and severe bilateral foraminal stenosis with nerve root compression. [Dkt. 14 at 15-17.] Although the ALJ summarized the MRI results, Denna contends that he did not explain how those findings were consistent with an RFC for light work. [*Id.*] Denna asserts that these complex diagnostic findings constituted "raw medical evidence" that the ALJ was not qualified to interpret without obtaining updated medical expert review. [*Id.* at 16.] Denna further argues that the ALJ improperly continued to rely on the state-agency reviewing physicians, whose opinions predated the November 2022 MRI and therefore did not account for the updated findings. [*Id.* at 17-18.] According to Denna, the MRI findings, particularly when combined with her obesity, support greater limitations in standing, walking, lifting, and carrying, and could have resulted in a sedentary RFC and a finding of disability under the Medical-Vocational Guidelines. [*Id.* at 18.]

Accordingly, Denna contends that remand is required for the ALJ to obtain medical expert review and build a logical bridge between the MRI evidence and the RFC determination.  [*Id.*]

The Commissioner argues that the ALJ was not required to obtain additional medical review of the November 2022 MRI because the ALJ acknowledged the findings and the record did not reflect worsening symptoms or additional treatment following the imaging.  [Dkt. 16 at 15.] The MRI showed an unchanged old, healed, mild wedge compression deformity at L1; mild diffuse lumbar spondylosis; grade II spondylolisthesis of L5 over S1 which appeared less than on concomitant x-rays and suggested instability; and bilateral foraminal stenosis greater on the right with compression of the exiting L5 nerve roots on both sides.  [*Id.* at 15-16; dkt. 10-2 at 21; dkt. 10-9 at 121.]  Denna sought little continued treatment for back pain in 2023, often reported no back pain, and had largely normal examinations.  [Dkt. 16 at 16.]  The Commissioner contends that the MRI did not "change the picture" so significantly as to render the state-agency opinions outdated, and substantial evidence, including those prior administrative medical findings, supported the ALJ's light-work RFC with postural limitations.  [*Id.* (citing *Stage v. Colvin*, 812 F.3d 1121, 11125 (7th Cir. 2016)).]

Denna reiterates that the ALJ failed to properly evaluate the functional impact of the November 2022 MRI, which showed severe bilateral foraminal stenosis with nerve root compression.  [Dkt. 17 at 12.]  She argues that the ALJ was not qualified to interpret these complex findings without updated medical input and that continuing to rely on state-agency reviewers who had not seen that MRI was improper.  [*Id.*]  Denna further contends that the Commissioner's reliance on conservative treatment overlooks that surgery was recommended but delayed due to her uncontrolled diabetes and that her treatment options were limited by addiction-related restrictions on pain medication.  [*Id.* at 13.]  According to Denna, the ALJ was required to obtain

medical expert review and build a logical bridge from the MRI findings—particularly in combination with her obesity—to the RFC, and his failure to do so requires remand.  [*Id.*]

The Court concludes that Denna has not demonstrated reversible error related to the November 2022 MRI.  The Court agrees with Denna that an ALJ may not interpret complex medical evidence on his own or continue to rely on outdated medical opinions when later evidence "changes the picture so much" that the prior assessments can no longer constitute substantial evidence.  *Stage*, 812 F.3d at 1125; *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014).  But that principle applies only where the new evidence is both significant and likely to alter the reviewing physicians' conclusions.  That is not the case here.  In Denna's case, the ALJ expressly summarized the November 2022 MRI findings, including the spondylolisthesis and bilateral foraminal stenosis.  [Dkt. 10-2 at 21.]  He did not ignore the imaging; rather, he considered it alongside the broader record, which included largely normal gait, intact strength, normal muscle bulk and tone, and relatively conservative treatment.  [Dkt. 10-2 at 19; dkt. 10-8 at 18-25.]  The record reflects limited follow-up for back pain in 2023 and no sustained increase in reported symptoms following the MRI.  [Dkt. 10-2 at 21; dkt. 10-9 at 121.]  The absence of worsening clinical findings after the imaging undercuts Denna's assertion that the MRI fundamentally altered the evidentiary landscape.

Moreover, contrary to Denna's characterization, the ALJ did not independently interpret the MRI to draw technical conclusions about its medical significance.  Instead, he evaluated the imaging in the context of longitudinal treatment notes and relied on prior administrative medical findings that already accounted for degenerative disc disease and abnormal imaging.  [Dkt. 10-2 at 25.]  Denna has not identified evidence showing that the November 2022 MRI revealed a new impairment or deterioration that would necessarily have prompted a different assessment by the

14

state-agency physicians.  *See Stage*, 812 F.3d at 1125 (remand required where later evidence could reasonably change the reviewing physician's opinion).

The RFC limited Denna to light work with additional postural restrictions, reflecting that the ALJ credited some degree of functional limitation.  [Dkt. 10-2 at 17-18.]  The mere existence of abnormal MRI findings does not establish greater work-related limitations absent corresponding evidence.  *See DuCharme v. Kijakazi*, 2022 WL 3287974, at *6 (7th Cir. 2022) (RFC determination is reserved to the ALJ).  The Court's role is not to reweigh the evidence but to determine whether substantial evidence supports the ALJ's conclusion.  *Id.*  Here, it does.  Accordingly, the Court finds that the ALJ adequately considered the November 2022 MRI in conjunction with the longitudinal record and did not err by declining to obtain additional medical expert review.

### D.    Whether the ALJ Properly Relied on Vocational Expert Testimony at Step Five

Denna next argues that the Commissioner failed to meet the Step Five burden of establishing that a significant number of jobs exist in the national economy that she can perform. [Dkt. 14 at 18.]  The ALJ relied on vocational expert testimony identifying the jobs of marker, garment sorter, and inspector/hand packager.  [*Id.* at 19.]  Denna contends that these positions are obsolete and outdated because they come from the Dictionary of Occupational Titles, which has not been updated since 1991 and reflects job descriptions dating back to the 1970s.  [*Id.* at 18.] She argues that courts have questioned the continued existence of these specific occupations, and that modern automation has rendered jobs like inspector and hand packager largely obsolete in their isolated DOT forms.  [*Id.*]  According to Denna, the ALJ's reliance on this allegedly outdated vocational testimony was improper and does not satisfy the Commissioner's burden to show a significant number of available jobs, requiring remand.  [*Id.* at 20.]

The Commissioner responds that the ALJ properly satisfied the Step Five burden by relying on unchallenged VE testimony identifying approximately 231,000 jobs nationally—inspector/hand packager (57,000), sorter (35,000), and marker (139,000)—that Denna could perform. [Dkt. 16 at 20-21.] The Commissioner argues that Denna forfeited any objection to the alleged obsolescence of these jobs because she did not challenge the VE's testimony at the hearing or in a post-hearing brief, as required by Seventh Circuit precedent. [*Id.* (citing *Fetting v. Kijakazi*, 62 F.4th 332, 337 (7th Cir. 2023) ("[a] claimant who does not object to a VE's testimony during the administrative hearing forfeits those objections.")).] The Commissioner argues that another court has recently rejected the argument that the maker and garment sorter are obsolete jobs. [*Id.* at 21 (citing *Weeder v. Dudek*, 2025 WL 848456, at *11 (M.D. Pa. Mar. 18, 2025).)] The Commissioner also argues that the identified jobs are commonly found in the national economy and that the VE's testimony was reliable given her qualifications, experience, and the absence of any objection to her methodology or credentials. [Dkt. 16 at 22.] The Commissioner notes that even under a sedentary RFC, the VE identified over 45,000 jobs nationally. [*Id.*] Accordingly, the Commissioner argues that substantial evidence supports the ALJ's Step Five finding and that remand is not warranted.

In reply, Denna contends that the Commissioner's forfeiture argument mischaracterizes her claim. [Dkt. 17 at 13.] Denna emphasizes that she is not challenging the VE's specific methodology but rather the overall reliability of testimony identifying outdated DOT occupations. [*Id.*] She argues that a claimant cannot waive the substantial-evidence standard and that the ALJ retains an independent duty to ensure VE testimony is reliable. [*Id.* at 13-14.] She maintains that reliance on the VE's credentials alone is insufficient and that blind acceptance of testimony based on potentially obsolete jobs cannot constitute substantial evidence. [*Id.* at 14.] Finally, she argues

16

that the Commissioner's reference to sedentary jobs is irrelevant because the ALJ did not rely on those jobs and, if limited to sedentary work, the Medical-Vocational Guidelines would direct a finding of disability.  [*Id.*]

At Step Five, the Commissioner bears the burden of establishing that a significant number of jobs exist in the national economy that Denna can perform.  20 C.F.R. § 404.1560(c)(2).  An ALJ may satisfy that burden through vocational expert testimony.  *See Biestek v. Berryhill*, 587 U.S. 97, 105–06 (2019).

Here, the ALJ relied on testimony from a vocational expert with a master's degree in rehabilitation counseling and approximately fifteen years of experience in job placement and vocational analysis.  [Dkt. 10-2 at 72.]  At the hearing, Denna, who was represented by counsel, did not object to the VE's qualifications, did not question the foundation for the job-number estimates, and did not argue that the identified occupations were obsolete or unreliable.  [*Id.*]  Nor did Denna submit a post-hearing brief raising those concerns.  Instead, counsel asked only a follow-up question regarding transferable skills.  [*Id.* at 75-76.]  Under Seventh Circuit precedent, a claimant who fails to raise specific objections to VE testimony during the administrative proceedings generally forfeits those objections on judicial review.  *See Schmitz v. Colvin*, 124 F.4th 1029, 1033 (7th Cir. 2024).

Denna attempts to avoid forfeiture by characterizing her argument as a general substantial-evidence challenge rather than a methodological objection.  It is true that a claimant cannot "waive" the substantial-evidence standard.  *Leisgang v. Kijakazi*, 72 F.4th 216, 220 (7th Cir. 2023).  But that principle does not relieve a claimant of the obligation to challenge vocational testimony when she believes it is unreliable.  The Seventh Circuit and controlling precedent has repeatedly emphasized that the ALJ is entitled to rely on unchallenged VE testimony, particularly where the

testimony is facially coherent and supported by the expert's credentials and experience. *Schmitz*, 124 F.4th at 1034.

Denna's argument on appeal rests largely on the age of the Dictionary of Occupational Titles and non-binding district court decisions questioning certain DOT job descriptions. [Dkt. 14 at 18.] But the Seventh Circuit Court of Appeals has not held that reliance on DOT-based occupations is *per se* improper. To the contrary, it has recognized that jobs commonly identified by VEs remain permissible bases for Step Five findings absent a developed evidentiary challenge to their existence or the reliability of the job-number estimates. *See Chavez* v. *O'Malley*, 96 F.4th 1016, 1023 (7th Cir. 2024). This Court cannot conclude that the fact that the DOT has not been updated since 1991 does not, standing alone, render VE testimony unreliable, especially when Denna did nothing below to develop that argument to the ALJ in her case. The ALJ was not required to *sua sponte* investigate the continued viability of each occupation where the VE provided uncontradicted testimony that approximately 231,000 jobs existed nationally that Denna could perform under the ALJ's ultimate RFC determination.

Because the Court has concluded that substantial evidence supports the ALJ's light-work RFC in this case, Denna's reliance on the Medical-Vocational Guidelines applicable to sedentary work is unavailing. [Dkt. 14 at 18.] The ALJ did not find Denna limited to sedentary work, and the Step Five analysis properly proceeded based on the supported RFC. For all of these reasons, the Court concludes that Denna has not shown reversible error in the ALJ's Step Five analysis.

E.      **Whether the ALJ Properly Evaluated Denna's Subjective Symptoms**

Denna argues that the ALJ improperly discounted her subjective symptom allegations by relying on her limited daily activities and objective medical evidence without adequately explaining how either undermined her claims. [Dkt. 14 at 20-21.] Denna contends that the ALJ

failed to explain how activities such as shopping, paying bills, and performing some household chores were inconsistent with her alleged limitations, particularly given that she would be considered disabled even at a sedentary level.  [*Id.* at 20.]  Denna further argues that the ALJ erred by discounting her symptoms based on a perceived lack of objective support, contrary to SSR 16-3p and controlling caselaw.  [*Id.* at 21.]

The Commissioner argues that the ALJ properly evaluated Denna's subjective symptom allegations by considering her daily activities, objective medical evidence, and treatment history. [Dkt. 16 at 17-18.]  The ALJ acknowledged Denna's reported limitations, including spending days in bed, needing a motorized cart to shop, and difficulty bending and standing, but the Commissioner contends that the ALJ reasonably concluded that Denna's ability to perform chores, drive, shop, use her phone, dine out, and work part-time delivering food suggested better functional capacity than alleged.  [*Id.* at 18.]  The Commissioner further contends that the ALJ permissibly considered objective medical findings, which reflected largely normal mental status exams and physical findings such as full strength, intact sensation, and normal gait.  [*Id.*]  Finally, the Commissioner notes gaps in Denna's treatment for back pain and her decision to decline recommended surgery, asserting that this course of treatment undermined claims of disabling symptoms.  [*Id.* at 19.]  Because the ALJ's evaluation was supported by evidence and not "patently wrong," the Commissioner urges the Court to affirm the ALJ's decision.  [*Id.* at 20.]

In reply, Denna argues that the ALJ cited her daily activities without explaining how those limited and assisted activities were inconsistent with her allegations or showed an ability to perform more than sedentary work.  [*Id.* at 15.]  She clarifies that she did not claim the ALJ could not consider objective evidence, but she emphasizes her position that the ALJ improperly relied on it without adequately evaluating the required nonmedical factors under SSR 16-3p.  [*Id.*]  Denna

further contends that the Commissioner's reliance on expert opinions that her symptoms were not "disabling" is misplaced because she would be found disabled if limited to sedentary work.  [*Id.*] Finally, she argues that the ALJ improperly relied on her failure to undergo surgery or seek additional treatment, ignoring that surgery was delayed due to uncontrolled diabetes and that other treatment options were limited.  [*Id.*]

An ALJ's evaluation of a claimant's subjective symptoms is entitled to special deference and will be overturned only if it is "patently wrong", that is, if it lacks evidentiary support.  *See Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017).  The question is not whether the Court would weigh the evidence differently but whether the ALJ built a logical bridge between the evidence and the conclusion reached.  *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020).

After reviewing the record, the Court concludes that the ALJ did not discount Denna's allegations solely because they were unsupported by objective findings.  Rather, he evaluated her symptoms in light of multiple factors identified in 20 C.F.R. § 404.1529(c) and SSR 16-3p, including daily activities, objective medical evidence, and the course of her treatment.  [Dkt. 10-2 at 23.]  The ALJ's decision reflects that he acknowledged Denna's reported limitations, such as spending days in bed, using a motorized cart while shopping, and experiencing difficulty bending and standing, yet reasonably concluded that her ability to drive, perform some household chores, dine out, use her phone, play games, and work part-time delivering food suggested greater functioning than alleged.  [*Id.*]  The ALJ was not required to find these activities dispositive; rather, he was permitted to consider them as one factor in assessing consistency.  *See Jeske v. Saul*, 955 F.3d 583, 593 (7th Cir. 2020).

The Court also concludes that the ALJ did not rely exclusively on objective medical evidence.  He discussed mental-status examinations showing average attention, logical thought

processes, and cooperative behavior, as well as physical examinations frequently documenting full strength, intact sensation, and a normal gait. [Dkt. 10-2 at 23.] Although Denna points to evidence supporting greater limitations, including a recommendation for surgery and use of pain medication, the ALJ acknowledged her degenerative disc disease and obesity and incorporated corresponding restrictions into the RFC. [*Id.* at 17-18.] The existence of some evidence supporting Denna's allegations does not render the ALJ's contrary assessment patently wrong where the record also contains substantial evidence supporting a less restrictive finding. Denna's arguments amount to a request for this Court to reweigh the evidence, which it is well-established that this Court cannot do.

Finally, the ALJ permissibly considered the nature and frequency of Denna's treatment. The record reflects gaps in treatment for back pain and largely conservative management, even after surgery was discussed. [Dkt. 10-2 at 21; dkt. 10-9 at 221-23.] While Denna explains that surgery was delayed due to uncontrolled diabetes and limited treatment options, the ALJ was entitled to consider the overall course of treatment in evaluating symptom intensity and persistence. In sum, because the ALJ's symptom evaluation is not patently wrong and is supported by substantial evidence, remand is not warranted on this ground.

### IV. CONCLUSION

The standard for disability claims under the Social Security Act is stringent. *Plessinger v. Berryhill*, 900 F.3d 909, 911 (7th Cir. 2018). "The Act does not contemplate degrees of disability or allow for an award based on partial disability." *Williams-Overstreet v. Astrue*, 364 F. App'x 271, 274 (7th Cir. 2010) (citing *Stephens v. Heckler*, 766 F.2d 284, 285 (7th Cir. 1985)). "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments

and for whom working is difficult and painful." *Id.* Taken together, the Court can find no legal basis presented by Denna to reverse the ALJ's decision that she was not disabled during the relevant period. Therefore, the ALJ's decision is **AFFIRMED**. Final judgment shall issue accordingly.

      **SO ORDERED**.

Date: 2/23/2026

Kellie M. Barr
United States Magistrate Judge
Southern District of Indiana

Distribution

All ECF-registered counsel of record via email